1  Arby Aiwazian (Cal. State Bar No. 269827)
       *arby@calljustice.com*
2  Joanna Ghosh (Cal. State Bar No. 272479)
       *joanna@calljustice.com*
3  Selena Matavosian (Cal. State Bar No. 348044)
       *selena@calljustice.com*
4  **LAWYERS *for* JUSTICE, PC**
   450 North Brand Boulevard, Suite 900
5  Glendale, California 91203
   Tel: (818) 265-1020 / Fax: (818) 265-1021
6
   *Attorneys for* Plaintiff
7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | ALEIDA MIRANDA, individually, and on behalf of other members of the | Case No.: 3:22-cv-03633-SK
12 | general public similarly situated and on behalf of other aggrieved employees | Honorable Sallie Kim
   | pursuant to the California Private | Courtroom C
13 | Attorneys General Act;
14 |            Plaintiff, | **CLASS ACTION**
15 |       vs. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
16 | AMERICAN NATIONAL RED | **AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND**
17 | CROSS, an unknown business entity; and DOES 1 through 100, inclusive, | **AUTHORITIES**
18 |            Defendants. | [Declaration of Proposed Class Counsel (Selena Matavosian); Declaration of
19 | | Proposed Class Representative (Aleida Miranda); and [Proposed] Order filed
20 | | concurrently herewith]
21 | | Date:            May 19, 2025
   | | Time:            9:30 a.m.
22 | | Courtroom:       C
23 | | Complaint Filed:  May 13, 2022
   | | Removal Filed:    June 21, 2022
24 | | FAC Filed:        July 12, 2022
   | | SAC Filed:        September 27, 2022
25 | | Trial Date:       None Set
26

27

28

*Left margin (vertical):* **LAWYERS *for* JUSTICE, PC** 450 North Brand Boulevard, Suite 900 Glendale, California 91203

1   TO THE HONORABLE COURT AND TO ALL PARTIES AND
2   THEIR COUNSEL OF RECORD:

3       **PLEASE TAKE NOTICE** that on May 19, 2025 at 9:30 a.m., or as soon
4   thereafter as the matter may be heard before the Honorable Sallie Kim in Courtroom
5   C of the United States District Court for the Northern District of California, located
6   at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco,
7   California 94102, Plaintiff Aleida Miranda ("Plaintiff") will, and hereby does, move
8   for an order:

- Granting preliminary approval of the proposed class action settlement described herein and as set forth in the Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement," "Agreement," or "Settlement Agreement"), attached as **EXHIBIT 2** to the Declaration of Selena Matavosian in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement, including, but not limited to, the means of allocation and distribution of funds, including and not limited to, Class Counsel Award, Class Representative Enhancement Award, and Settlement Administrator Costs;

- Granting approval of the PAGA Settlement Amount, including the allocations for penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA Settlement Amount")

- Conditionally certifying the proposed Class for settlement purposes;

- Preliminarily appointing Plaintiff Aleida Miranda as Class Representative;

- Preliminarily appointing Arby Aiwazian, Joanna Ghosh, and Selena Matavosian of Lawyers *for* Justice, PC as Class Counsel;

- Approving the proposed Notice of Pendency of Class Action Settlement and Hearing Date for Court Approval ("Class Notice"), attached as "**EXHIBIT 1**" to the [Proposed] Order Granting Preliminary Approval of Class Action and PAGA Settlement;

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

- Directing the mailing of the Class Notice to the Class Members;
- Approving the proposed deadlines for the notice and settlement administration process;
- Appointing Phoenix Settlement Administrators as the Settlement Administrator; and
- Scheduling a hearing to consider whether to grant final approval of the Settlement, at which time the Court will also consider whether to grant final approval of the requests for Class Counsel Award, Class Representative Enhancement Award, Settlement Administrator Costs, and allocation for the PAGA Settlement Amount.

This motion is based upon the following memorandum of points and authorities; the Settlement Agreement; the Declarations of Proposed Class Counsel (Selena Matavosian) and Proposed Class Representative (Aleida Miranda) in support thereof; as well as the pleadings and other records on file with the Court in this matter, and such evidence and oral argument as may be presented at the hearing on this motion.

Dated: April 15, 2025                    **LAWYERS *for* JUSTICE, PC**

By: _____

Selena Matavosian
*Attorneys for* Plaintiff

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

## TABLE OF CONTENTS

I.      SUMMARY OF MOTION .......................................................................... 1

II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND ..... 3

III.    SUMMARY OF THE SETTLEMENT TERMS ................................ 4

   A.   The Class for Settlement Purposes ................................................... 4

   B.   Essential Terms of the Settlement ................................................... 4

   C.   Calculation of Individual Settlement Payments ........................... 6

   D.   Calculation of Individual PAGA Payments ................................... 7

   E.   Request for Exclusion, Notice of Objection, and Compensable
        Work Weeks Dispute Procedures ................................................... 7

   F.   Scope of the Released Class Claims and Released PAGA
        Claims ............................................................................................... 9

IV.     THE LEGAL STANDARD FOR PRELIMINARY APPROVAL
        OF THE CLASS ACTION SETTLEMENT ................................... 10

V.      THE SETTLEMENT SHOULD BE PRELIMINARILY
        APPROVED .................................................................................... 11

   A.   The Settlement Resulted from Arm's Length Negotiations and
        Extensive Investigation and Discovery ........................................ 11

   B.   The Settlement Is Fair, Reasonable, and Adequate ................... 13

        1.   *The Settlement Fairly Allocates and Distributes Payment.*
             *............................................................................................ 14*

        2.   *The Settlement is Within the Range of Possible Approval.* 15

VI.     APPOINTMENT OF CLASS REPRESENTATIVE AND
        CONTEMPLATED CLASS REPRESENTATIVE
        ENHANCEMENT AWARD ............................................................. 15

VII.    APPOINTMENT OF CLASS COUNSEL AND CONTEMPLATED
        CLASS COUNSEL AWARD ......................................................... 16

VIII.   CERTIFICATION OF THE PROPOSED CLASS IS

**APPROPRIATE UNDER RULE 23** .......................................................**18**

    **A.**    **Numerosity** ...........................................................**18**

    **B.**    **Commonality** .......................................................**19**

    **C.**    **Typicality**.............................................................**19**

    **D.**    **Adequacy of Representation** .............................**20**

    **E.**    **Predominance and Superiority**........................**21**

**IX.**    **ADEQUACY OF THE METHOD OF NOTICE**........................**22**

**X.**    **APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR**

    **AND SETTLEMENT ADMINISTRATOR COSTS**........................**23**

**XI.**    **DEADLINES FOR NOTICE AND ADMINISTRATION**...............**24**

**XII.**    **CONCLUSION** .......................................................**25**

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

# <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Dukes v. Wal–Mart, Inc.*, 564 U.S. 338, 350 & 359 (2011) .................................. 19

*Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974)............................ 23

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)....................................................... 17

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ........................... 22

*Johnson v. California*, 543 U.S. 499, 504–05 (2005).............................................. 19

**Treatises**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ................... 20, 21

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ................................... 19, 20

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ......................................... 19

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ................... 22

*In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash.
1992).................................................................................................................. 19

*In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013).............. 17

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) .............. 19

*Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)........................... 22

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)........ 17

*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal.
1996).................................................................................................................. 22

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)................. 18

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL
5878390, at *6 (N.D. Cal. Nov. 21, 2012) ....................................................... 13

*Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ..................................... 20

**Rules**

Federal Rule of Civil Procedure  23(a) ............................................................. 18, 19

Federal Rule of Civil Procedure  23(a)(1)............................................................... 18

Federal Rule of Civil Procedure  23(a)(4)............................................................... 20

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Federal Rule of Civil Procedure  23(b) ........................................................................... 18

Federal Rule of Civil Procedure  23(b)(3) ...................................................................... 21

Federal Rule of Civil Procedure  23(c)(2) ...................................................................... 23

Federal Rule of Civil Procedure 23(c)(2)(B) ................................................................. 22

**Other Authorities**

*Manual for Complex Litig., Fourth* § 21.132 ............................................................... 20

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF MOTION

Plaintiff Aleida Miranda ("Plaintiff" or "Class Representative") seeks preliminary approval of the Joint Stipulation of Class Action and PAGA Settlement and Release of Claims ("Settlement," "Agreement," or "Settlement Agreement") entered into by and between Plaintiff, individually and on behalf of all others similarly situated and other aggrieved employees, on the one hand, and Defendant American National Red Cross ("Defendant"), on the other hand. Subject to Court approval, Plaintiff and Defendant (together, the "Parties") have agreed to settle the above-captioned lawsuit (the "Action") for a Total Settlement Amount of $3,500,000.00.[1]

The Total Settlement Amount includes the following: (1) Individual Settlement Payments to Settlement Class Members; (2) payment in an amount not to exceed $10,000.00 to the Class Representative ("Class Representative Enhancement Award"); (3) attorneys' fees in an amount not to exceed thirty-five percent (35%) of the Total Settlement Amount (i.e., $1,225,000.00 if the Total Settlement Amount is $3,500,000.00) and reimbursement of litigation costs and expenses in an amount not to exceed $40,000.00 (together, "Class Counsel Award") to Lawyers *for* Justice, PC ("Class Counsel"); (4) settlement administration costs in an amount not to exceed $25,000.00 ("Settlement Administrator Costs") to Phoenix Settlement Administrators ("Phoenix" or "Settlement Administrator"); and (5) the amount of $400,000.00 allocated to penalties ("PAGA Settlement Amount") under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). Settlement Agreement, Section III, ¶¶ 20, 24, 25, 26 & 28.

Plaintiff also seeks to provisionally certify the following Class for settlement purposes, which Defendant does not oppose: All current and former non-exempt

---

[1] A copy of the fully-executed Settlement Agreement is attached as **EXHIBIT 2** to the Declaration of Selena Matavosian in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Matavosian Decl.").

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

employees who worked for Defendant in California between May 13, 2018 through February 9, 2024 ("Class" or "Class Members"). Settlement Agreement, Section I, ¶ 5. The Class Period is defined as the period from May 13, 2018 through February 9, 2024. *Id*., Section I, ¶ 7. The Class is estimated to consist of approximately 2,680 individuals. Matavosian Decl., ¶ 28. Class Members who do not submit a valid and timely Request for Exclusion from the Class Settlement ("Settlement Class Members") will receive a *pro rata* share of the Net Settlement Fund. Settlement Agreement, Section I, ¶ 43. The Net Settlement Fund refers to the Total Settlement Amount, less the Court-approved Class Counsel Award, Class Representative Enhancement Award, Settlement Administrator Costs, and PAGA Settlement Amount. *Id*., Section I, ¶ 25. Settlement Class Members' *pro rata* share of the Net Settlement Fund ("Individual Settlement Payment") will be distributed based upon the number of weeks in which each Class Member worked as a non-exempt employee of Defendant in California at any time during the Class Period, calculated by Defendant by counting the number of calendar weeks during the Class Period that any Class Member worked at least one (1) day ("Compensable Work Weeks"). *Id*., Section I, ¶¶ 12 & 21.

Plaintiff additionally represents a group of all current and former non-exempt employees who worked for Defendant in California during the PAGA Period ("Aggrieved Employees"). Settlement Agreement, Section I, ¶ 2. The PAGA Period is defined as the period from March 10, 2021 through February 9, 2024. *Id*., Section I, ¶ 29. Aggrieved Employees will receive a *pro rata* share of the twenty-five percent (25%) portion of the PAGA Settlement Amount ("Aggrieved Employee Amount") based upon their number of Compensable Pay Periods during the PAGA Period ("Individual PAGA Payment"). *Id*., Section I, ¶¶ 22 & 31. Compensable Pay Periods means the number of pay periods in which each Aggrieved Employee worked as a non-exempt employee of Defendant in California at any time during the PAGA Period, calculated by Defendant by counting the number of pay periods during the

PAGA Period that any Aggrieved Employee worked at least one (1) day. *Id.*, Section I, ¶ 11. The remaining seventy-five percent (75%) portion of the PAGA Settlement Amount ("LWDA Payment") shall be distributed to the California Labor and Workforce Development Agency ("LWDA"). *Id.*, Section I, ¶ 31.

The Settlement, upon final approval by the Court and funding of the Total Settlement Amount, will operate to resolve the Released Class Claims of Plaintiff and Settlement Class Members and the Released PAGA Claims of Plaintiff, the State of California, and the Aggrieved Employees against the Released Parties.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Defendant is a nonprofit organization that provides emergency assistance, disaster relief, and blood donation services in the United States. Defendant operates numerous blood donation centers across California. Plaintiff is a former employee of Defendant.

For a discussion of relevant procedural history and facts regarding this matter, please see the Declaration of Selena Matavosian at paragraphs 2 to 20.

Plaintiff's core allegations are that Defendant has violated California wage and hour law, including but not limited to laws set forth in the California Labor Code, by engaging in a uniform practice and procedure, with respect to Plaintiff, Class Members, and Aggrieved Employees of, *inter alia*, failing to pay all overtime and minimum wages, at all or at the correct rate of pay, failing to provide compliant meal and rest periods and associated premium pay, failing to timely pay wages during employment and upon termination of employment, failing to provide compliant wage statements, failing to maintain requisite payroll records, failing to pay reporting time pay, and failing to reimburse necessary business expenses, and thereby engaged in unfair business practices in violation of California Business and Professions Code section 17200, *et seq*. and conduct that gives rise to penalties pursuant to PAGA. Plaintiff contends that she, the Class Members, and Aggrieved Employees are entitled to, *inter alia*, unpaid wages, penalties (including and not limited to, penalties pursuant

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

to PAGA), and attorneys' fees and costs.

Defendant has denied, and continues to deny, any liability and wrongdoing of any kind associated with any of the allegations in the Action, and further denies that the Action is appropriate for representative adjudication or class treatment for any purpose other than for settlement purposes.

The Parties have actively litigated this matter since the Action commenced on May 13, 2022. The Parties have conducted significant informal discovery and investigation into the claims, and engaged in extensive discussions about the strengths and weaknesses of Plaintiff's claims, and Defendant's defenses thereto, to try to resolve the Action. On June 8, 2023, the Parties participated in arm's-length and informed negotiations with Steve Serratore, Esq. ("Mediator"), a respected mediator of complex wage and hour actions. With the aid of the Mediator's evaluation, the Parties ultimately reached the Settlement described herein to resolve the Action in its entirety.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Class for Settlement Purposes

For settlement purposes only, the Parties agree to class action certification of the following Class, consisting of approximately 2,680 individuals:

> All current and former non-exempt employees who worked for Defendant in California between May 13, 2018 through February 9, 2024. Settlement Agreement, Section 1 ¶ 5.

As discussed in Section VI, *infra*, class certification is appropriate with respect to the Settlement.

### B.   Essential Terms of the Settlement

Defendant will pay a Total Settlement Amount of $3,500,000.00 on a non-reversionary basis. Settlement Agreement, Section I, ¶ 44. The Settlement provides that should the actual number of Compensable Work Weeks for the Class Members during the period from May 13, 2018 to June 8, 2023 exceed 267,285 (i.e., 7.5% higher than 247,486), then Defendant shall have the option of either: (a) increasing

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

the Total Settlement Amount on a *pro rata* basis equal to the percentage increase in the number of Compensable Work Weeks worked by the Class Members above seven and a half percent (7.5%), meaning Defendant will increase the Total Settlement Amount by the percentage amount above seven and a half percent (7.5%) (e.g., if the number of Compensable Work Weeks increases by 8% to 267,285 Compensable Work Weeks, the Total Settlement Amount will increase by one-half percent (0.5%)); or (b) adjusting the end date of the Class Period and PAGA Period so that they end on the last date on which the Compensable Work Weeks for the Class Members is no more than 266,047 Compensable Work Weeks. *Id.*, Section III, ¶ 18.

Under the terms of the Settlement, the Net Settlement Fund is the Total Settlement Amount, less the following amounts subject to approval by the Court: (1) attorneys' fees in an amount not to exceed thirty-five percent (35%) of the Total Settlement Amount (i.e., $1,225,000.00 if the Total Settlement Amount is $3,500,000.00) and reimbursement of litigation costs and expenses in an amount not to exceed $40,000.00 (i.e., Class Counsel Award) to Class Counsel; (2) Class Representative Enhancement Award to Class Representative in an amount not to exceed $10,000.00; (3) Settlement Administrator Costs in an amount not to exceed $25,000.00 to Phoenix; and (4) PAGA Settlement Amount in the amount of $400,000.00, of which seventy-five percent (75%) (i.e., $300,000.00) will be distributed to the LWDA (i.e., LWDA Payment) and twenty-five percent (25%) (i.e., $100,000.00) will be distributed to Aggrieved Employees (i.e., Aggrieved Employee Amount). Settlement Agreement, Section III, ¶¶ 24, 25, 26 & 28.

Assuming that the amounts allocated under the Settlement toward these payments are awarded in full, the Net Settlement Fund is currently estimated to be $1,800,000.00, subject to increase based on Class Counsel's actual and approved litigation costs and expenses. Matavosian Decl., ¶ 22. The Net Settlement Fund will be distributed as Individual Settlement Payments to Settlement Class Members, which will be calculated based upon the number Compensable Work Weeks worked

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

during the Class Period. Settlement Agreement, Section III, ¶ 20. The PAGA Settlement Amount will be distributed to the LWDA and to Aggrieved Employees, as Individual PAGA Payments, which will be calculated based upon the number Compensable Pay Periods worked during the PAGA Period. *Id.*, Section III, ¶ 22.

### C.     Calculation of Individual Settlement Payments

The Settlement Administrator will calculate each Settlement Class Member's Individual Settlement Payment, in accordance with the Settlement Agreement and as follows:

    a. After preliminary approval of the Settlement, the Settlement Administrator will divide the Net Settlement Fund by the Compensable Work Weeks of all Class Members to yield the "Estimated Compensable Work Week Value," and multiply each Class Member's individual Compensable Work Weeks by the Estimated Compensable Work Week Value to yield her, his, or their estimated gross Individual Settlement Payment that she, he, or they may be eligible to receive under the Class Settlement. Settlement Agreement, Section III, ¶ 20. a.

    b. After final approval of the Settlement, the Settlement Administrator will divide the final Net Settlement Fund by the Compensable Work Weeks of all Settlement Class Members to yield the "Final Compensable Work Week Value," and multiply each Settlement Class Member's individual Compensable Work Weeks by the Final Compensable Work Week Value to yield her, his, or their gross Individual Settlement Payment. Settlement Agreement, Section III, ¶ 20. b.

All gross Individual Settlement Payments will be allocated as follows: ten percent (10%) as wages, forty-five percent (45%) as penalties, and forty-five percent (45%) as interest. Settlement Agreement, Section III, ¶ 21. The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to penalties and interest will be reported on an IRS Form 1099 by the Settlement Administrator. Ibid. The Settlement Administrator will withhold the employee's share of taxes and withholdings with respect to the wages portion of the gross Individual Settlement Payments, and issue checks to Settlement Class Members net of these taxes and withholdings. Ibid. Defendant shall pay the employer's share of payroll taxes due on the portion of the Individual Settlement Payments allocated

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

to wages ("Employer Taxes") separately and in addition to the Total Settlement Amount. *Id*., Section I, ¶ 18 & Section III, ¶ 19.

### D.    Calculation of Individual PAGA Payments

The Settlement Administrator will calculate each Aggrieved Employee's Individual PAGA Payment, in accordance with the Settlement Agreement and as follows: The Settlement Administrator will divide the Aggrieved Employee Amount, i.e., 25% of the PAGA Settlement Amount, by the total number of Compensable Pay Periods of all Aggrieved Employees to yield the "PAGA Compensable Pay Period Value," and multiply each Aggrieved Employee's individual Compensable Pay Periods by the PAGA Compensable Pay Period Value to yield her, his, or their Individual PAGA Payment. Settlement Agreement, Section III, ¶ 22. All Individual PAGA Payments will be allocated as one hundred percent (100%) non-wages for which an IRS Form 1099 will be issued (if applicable). Ibid.

### E.    Request for Exclusion, Notice of Objection, and Compensable Work Weeks Dispute Procedures

Any Class Member wishing to be excluded from the Class Settlement must submit a written letter indicating a request to be excluded ("Request for Exclusion") to the Settlement Administrator, by mail, on or before the date that is forty-five (45) calendar days after the Settlement Administrator mails the Notice of Pendency of Class Action Settlement and Hearing Date for Court Approval ("Class Notice" or "Notice of Class Action Settlement") to Class Members ("Response Deadline"). Settlement Agreement, Section I, ¶¶ 39 & 40. A Request for Exclusion must: (a) contain the case name and number of the Action; (b) contain the Class Member's full name, signature, mailing address, telephone number, and last four (4) digits of their Social Security Number; (c) contain a simple statement electing to be excluded from the Class Settlement; and (d) be submitted by mail to the Settlement Administrator at the specified address, postmarked on or before the Response Deadline. *Id*., Section I, ¶ 40. Any Class

Member who requests to be excluded from the Class Settlement will not be entitled to an Individual Settlement Payment and will not be bound to the Class Settlement, or have any right to object, appeal, or comment thereon. *Id*., Section III, ¶ 14.  Any Class Member who is also considered an Aggrieved Employee will still be issued their Individual PAGA Payment and be bound to the PAGA Settlement, regardless of whether they submit a Request for Exclusion. *Ibid*.

Settlement Class Members who wish to object to the Class Settlement may do so in person at the Final Approval Hearing and/or by submitting a written objection to the Class Settlement ("Notice of Objection") to the Settlement Administrator, by mail, on or before the Response Deadline. Settlement Agreement, Section I, ¶ 27 & Section III, ¶ 15. The Notice of Objection must: (a) contain the case name and number of the Action; (b) contain the Settlement Class Member's full name, signature, mailing address, telephone number, and last four (4) digits of Social Security Number; (c) contain a written statement of all grounds for the objection accompanied by any legal support for such objection; (d) attach copies of any papers, briefs, or other documents upon which the objection is based; (e) identify whether the Settlement Class Member is represented by legal counsel for the objection and provide said counsel's full name and contact information; and (f) be submitted by mail to the Settlement Administrator at the specified address, postmarked on or before the Response Deadline. *Id*., Section I, ¶ 27. An individual who submits a valid and timely Request for Exclusion from the Class Settlement may not object to the Class Settlement. *Id*., Section III, ¶ 15.

Class Members will have the opportunity to dispute the number of Compensable Work Weeks stated on their Class Notice by submitting a written letter disputing the pre-printed information on the Class Notice ("Compensable Work Weeks Dispute") to the Settlement Administrator, by mail, on or before the Response Deadline. Settlement Agreement, Section I, ¶ 13. The Compensable Work Weeks Dispute must: (a) contain the case name and number of the Action;

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

(b) contain the Class Member's full name, signature, mailing address, telephone number, and last four (4) digits of their Social Security Number; (c) clearly state that the Class Member disputes the number of Compensable Work Weeks credited to her, him, or they for the Class Period and what she, he, or they contend is the correct number to be credited to her, him, or they; (d) attach any documentation that she, he, or they has to support the dispute; and (e) be submitted by mail to the Settlement Administrator at the specified address, postmarked on or before the Response Deadline. Ibid.

## F.     Scope of the Released Class Claims and Released PAGA Claims

The Released Class Claims that are the subject of the Settlement are:

[A]ny and all claims under state, federal, or local law, arising out of the claims pled in the Action or that could have been pled in the Action and all other claims, including but not limited to those under the California Labor Code, Wage Orders, regulations, and/or other provisions of law, that could have been asserted based on the facts pled or that could have been pled in the Action, and other claims for: (1) failure to pay overtime wages; (2) failure to pay meal period premiums; (3) failure to pay rest period premiums; (4) failure to pay minimum wages; (5) failure to timely pay wages upon termination; (6) failure to timely pay wages during employment; (7) failure to provide compliant wage statements; (8) failure to keep requisite payroll records; (9) failure to reimburse necessary business expenses; (10) violation of California's unfair competition law, and (11) claims for damages or remedies based on the foregoing, including but not limited to minimum and overtime wages, meal and rest period premiums, reimbursements, interest, liquidated damages, statutory penalties, injunctive relief, declaratory relief, attorneys' fees, or costs. Settlement Agreement, Section I, ¶ 36.

The Released PAGA Claims that are the subject of the Settlement are:

[A]ny and all claims for civil penalties under the California Labor Code Private Attorneys General Act of 2004, codified at California Labor Code § 2698 *et seq*., based on the facts pled in the Action and PAGA Notice or that could have been asserted based on the facts pled in the Action and PAGA Notice, for violations of the California Labor Code and Wage Orders,  for: (1) failure to pay overtime wages; (2) failure to pay meal period premiums; (3) failure to pay rest period premiums; (4) failure to pay minimum wages; (5) failure to timely pay wages upon

9

termination; (6) failure to timely pay wages during employment; (7) failure to provide compliant wage statements; (8) failure to keep requisite payroll records; and (9) failure to reimburse necessary business expenses. Settlement Agreement, Section I, ¶ 37.

The Released Parties means Defendant, and each of its current, former, and future affiliated entities, officers, directors, representatives, owners, partners, subsidiaries, parent companies, joint venturers, insurers, administrators, agents, members, predecessors, managers, servants, successors-in-interest, assigns, and affiliates. Settlement Agreement, Section I, ¶ 38.

As of the Effective Date[2] and full funding of the Total Settlement Amount, Plaintiff and all Settlement Class Members release the Released Parties from the Released Class Claims. Settlement Agreement, Section III, ¶ 1. As of the Effective Date and full funding of the Total Settlement Amount, Plaintiff, the State of California with respect to all Aggrieved Employees, and all Aggrieved Employees release the Released Parties from the Released PAGA Claims. *Id*., ¶ 2.

## IV.  THE LEGAL STANDARD FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

Class action settlements require court approval. Fed. R. Civ. Proc. 23(e). Although judicial policy favors settlement of class actions, *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992), the decision to approve or reject a settlement is within the trial court's discretion, and that decision may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs*, 955 F.2d at 1276.

A settlement should be approved if it is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e). In approving a class action settlement, Courts engage in a two-step process: (1) preliminary approval of the settlement; and (2) a later detailed review after notice is given to class members, to determine whether final approval is appropriate. *Nat'l Rural Telecomms. Coop. v.*

---

[2] See Settlement Agreement, Section I, ¶ 17 for the definition of the "Effective Date."

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

*DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage, courts must approve a class action settlement "if it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

In evaluating the fairness of the class action settlement, courts should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. Courts need only ensure that the settlement is not a product of "fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.*

## V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Preliminary approval is appropriate if the settlement is "potentially fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007), and has no "glaring deficiencies" that would make it clear that a final approval hearing is not warranted. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 478 (E.D. Cal. Mar. 4, 2010). As discussed below, the Settlement resulted from hard-fought litigation and extensive negotiations, and is fair and reasonable. Therefore, the Settlement should be preliminarily approved.

### A.    The Settlement Resulted from Arm's Length Negotiations and Extensive Investigation and Discovery

An initial presumption of fairness exists "if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). Courts give great weight to such recommendation as class counsel is most familiar with the issues underlying the case. *Nat'l Rural*, 221 F.R.D. at 528.

Here, the Parties have actively litigated the Action since it commenced on May 13, 2022. Class Counsel conducted a thorough investigation into the facts and

circumstances of the case and diligently investigated the allegations in this lawsuit. Matavosian Decl., ¶¶ 37-39. Class Counsel reviewed a large volume of documents and data obtained from Defendant, Plaintiff, and other sources, including, but not limited to: Plaintiff's employment records, a sampling of Plaintiff's and other Class Members' time data and pay records, multiple iterations of Defendant's Employee Handbook, supplements to Defendant's Employee Handbook, earning statements, procedures, and policies (including but not limited to Work Hours and Compensation Policies), among other information and documents. *Id.*, ¶ 38. Class Counsel also drafted pleadings and the mediation brief and prepared for and attended court proceedings, settlement negotiations, and the mediation, among other tasks. Ibid. Counsel for the Parties also met and conferred on numerous occasions, e.g., to discuss issues relating to the pleadings, and the production of documents and data prior to the mediation. Ibid. The data and documents produced in this matter enabled Class Counsel to assess and value the class and PAGA claims and prepare violation, damages, and penalties analyses models. *Id.*, ¶ 41.

The Parties reached the Settlement after reviewing all available evidence, arm's-length bargaining, and participating in mediation conducted by Steven Serratore, Esq., a well-respected mediator experienced in mediating complex labor and employment matters. Matavosian Decl., ¶ 37. During the mediation, the Parties exchanged information and discussed various aspects of the case, including and not limited to, the risks and delays of further litigation, the risks to the Parties of proceeding with class certification and/or representative adjudication, the law relating to off-the-clock theory, regular rate of pay, rounding, meal and rest periods, PAGA representative actions, and wage-and-hour law and enforcement, as well as the evidence produced and analyzed, and the possibility of appeals, among other things. Ibid.

During all settlement discussions, the Parties conducted their negotiations at arm's length in an adversarial position. Matavosian Decl., ¶ 37. Arriving at a

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

settlement that was acceptable to all Parties was not easy. Ibid. With the aid of the mediator's evaluations, the Parties have agreed that the matter is well-suited for settlement given the legal issues relating to Plaintiff's principal claims, as well as the costs and risks to both sides that would attend further litigation. Ibid. The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals. *Id.,* ¶¶ 40, 41 & 48.

The Settlement is based on this large volume of facts, evidence, and investigation, and the Parties' negotiations during the mediation.[3] While the Parties disagree over the merits and certifiability of Plaintiff's claims, Plaintiff and Class Counsel agree that the Settlement is fair, reasonable, adequate, and in the best interest of the Class, State of California, and Aggrieved Employees, in light of all known facts and circumstances. Matavosian Decl., ¶¶ 37, 39 & 48.

### B.    The Settlement Is Fair, Reasonable, and Adequate

The Total Settlement Amount of $3,500,00.00 represents a fair, reasonable, and adequate resolution of this lawsuit. Matavosian Decl., ¶¶ 37, 39 & 48. Under the Settlement, the entire Net Settlement Fund will be distributed to Settlement Class Members and the entire PAGA Settlement Amount will be distributed to the LWDA and to Aggrieved Employees. *Id.,* ¶ 22. The amount of the Settlement is reasonable considering the risks relating to certification, trial, potential appeals, and the ability to recover monetary relief on a class-wide or representative basis. *Id.,* ¶¶ 37, 39 & 48. Additionally, the Settlement guarantees a certain monetary recovery to Settlement Class Members, Aggrieved Employees, and the State of California in a reasonably short period of time, as opposed to waiting additional years for the same, or possibly, no recovery. *Id.,* ¶ 36.

///

---

[3] *See Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (stating that participation in private mediation "tends to support the conclusion that the settlement process was not collusive").

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

The Settlement was calculated using data and information obtained through case investigation, Defendant's removal papers, informal discovery, and exchange of information in advance of and/or in the context of mediation and settlement negotiations. Matavosian Decl., ¶¶ 37, 38, & 41. Prior to the mediation, Class Counsel conducted extensive investigation into the claims. *Id.*, ¶ 37. The data and information obtained enabled Class Counsel to calculate the value of the claims and the monetary recovery that could potentially be obtained, and permitted a complete understanding of Defendant's employment policies, practices, and procedures. *Id.*, ¶¶ 37 & 41. This information proved invaluable in negotiating a settlement amount that fairly compensates the Class Members and the State of California. Ibid.

The Parties have also considered the potential risks and rewards inherent in any case and, in particular, with this case. Matavosian Decl., ¶¶ 40 & 41. Prior to the mediation, Class Counsel performed extensive damages and valuation analysis based on class data and a sampling of data provided by Defendant. *Id.*, ¶¶ 46. During the mediation, Defendant contended, among other things, that their policies and practices fully complied with California law. *Id.*, ¶ 45.

Plaintiff faces numerous risks in continued litigation, including and not limited to, bifurcation of discovery and/or trial, a denial of class certification, class decertification after certification, adverse findings regarding liability, adverse findings regarding damages and penalties (including and not limited to, court discretion to reduce civil penalties), potential appeals, and uncertainty in collecting on any judgment. Matavosian Decl., ¶ 46. Plaintiff also faces the real possibility that the amount recovered against Defendant after years of litigation and a lengthy and costly trial is less than the amount negotiated in this Settlement. Ibid.

   1.   *The Settlement Fairly Allocates and Distributes Payment.*

There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds for purposes of preliminary approval. Even at the final approval stage: "an allocation formula need only have a reasonable, rational basis, particularly

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

if recommended by experienced and competent class counsel." *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014); *see Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

Here, the Settlement is fair because it poses no risk of unequal treatment of any Class Member. Individual Settlement Payments will be calculated on a *pro rata* basis based upon the number of each Settlement Class Member's Compensable Work Weeks during the Class Period. Settlement Agreement, Section I, ¶ 21. Furthermore, the State of California will be issued payment of its seventy-five percent (75%) share of the amount allocated toward PAGA penalties, in conformity with PAGA. Cal. Lab. Code § 2699(i). Considering the facts in the case, the amount of the Settlement represents a fair, reasonable, and adequate recovery for the Class Members and the State of California. Matavosian Decl., ¶ 37, 39 & 48.

> ### 2.     The Settlement is Within the Range of Possible Approval.

The Settlement, which provides for a Total Settlement Amount of $3,500,000.00, provides substantial monetary recovery to Settlement Class Members and the State of California, and is fair, reasonable, and adequate in light of the value of the claims and the significant risks of continued litigation. Similarly, all of the other Settlement terms for which Plaintiff requests approval and/or preliminary approval fall within the range of reasonableness.

## VI.    APPOINTMENT OF CLASS REPRESENTATIVE AND CONTEMPLATED CLASS REPRESENTATIVE ENHANCEMENT AWARD

Plaintiff has spent considerable time and effort to produce relevant documents and past employment records and to provide the facts and evidence necessary to attempt to prove the allegations. Matavosian Decl., ¶ 24; Declaration of Aleida Miranda in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Miranda Decl."), ¶¶ 3–4. Plaintiff was available whenever Class Counsel needed her and actively tried to obtain

information that would benefit the Class. Matavosian Decl., ¶ 24; Miranda Decl. ¶¶ 3–4. Accordingly, it is appropriate for Plaintiff to be appointed as Class Representative.

Furthermore, it is appropriate and just for Plaintiff to receive a Class Representative Enhancement Award of up to $10,000.00. Matavosian Decl., ¶ 24. The Class Representative Enhancement Award will be paid in addition to any Individual Settlement Payment that the Class Representative is entitled to receive as a Settlement Class Member. Ibid.

The trial court has discretion to award incentives to the class representative.[4] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Courts routinely approve service/enhancement awards to class representatives for their time and efforts, and the risks they undertake on behalf of the class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving service awards in the range of $2,000 to $25,000). "Enhancement awards are particularly appropriate in wage-and-hour actions" because named plaintiffs bear "a significant reputational risk for bringing suit against their former employers." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015) (quotation marks omitted).

## VII.  APPOINTMENT OF CLASS COUNSEL AND CONTEMPLATED CLASS COUNSEL AWARD

Class Counsel meets the requirements under Federal Rule of Civil Procedure 23(g). Class Counsel conducted extensive research, investigation, discovery, litigation, and analysis of the potential value of the claims. Matavosian Decl., ¶¶ 37 & 38. Additionally, Class Counsel are highly experienced in wage-

---

[4] In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have considered the factors set forth *in Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995): (1) the risk to the class representative in commencing a class action; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g., In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

and-hour litigation and class action cases. *Id*., ¶¶ 31-35. Class Counsel have committed and continue to commit significant financial and staffing resources to representation in this matter. *Id*., ¶¶ 37-39. As such, it is appropriate to appoint Lawyers *for* Justice, PC to represent the Class.

The Settlement establishes a Total Settlement Amount of $3,500,000.00 and provides for Class Counsel to apply for an award in an amount of up to thirty-five percent (35%) of the Total Settlement Amount (i.e., $1,225,000.00) for attorneys' fees and for reimbursement of actual litigation costs and expenses of not more than $40,000.00. Settlement Agreement, Section III, ¶ 25. Class Counsel will file an appropriate motion or application in advance of the Final Approval Hearing pursuant to Rule 23(h), requesting an award of attorneys' fees and reimbursement of litigation costs and expenses and submit evidence and documents to demonstrate the work performed and expenses incurred in this matter.

In reviewing a fee award request, courts consider the following factors: (1) the results achieved; (2) whether there are benefits to the class beyond the immediate generation of a cash fund; (3) the risks of litigation; (4) the skill required of counsel and quality of the work performed; (5) the contingent nature of the fee and the foregoing by counsel of other work; and (6) the reactions of the class. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013). Of these factors, the most significant factor is the "degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

The goal is to award "reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). District courts usually award attorneys' fees in the 30-40% range in wage-and-hour class actions that result in recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing recent wage-and-hour class actions where district courts approved attorneys' fee awards

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**LAWYERS** *for* **JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

ranging from 30-33%); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving attorneys' fees of one-third of the common fund and holding that the award was similar to awards in other wage-and-hour class actions where fees ranged from 30.3- 40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) (recognizing that "fee awards in class actions average around one-third" of the settlement).

Here, the attorneys' fees award provided for by the Settlement is reasonable, particularly in light of the time and effort expended by Class Counsel. Class Counsel litigated this case for over two (2) years and was actively preparing for class certification, with the possibility of an unsuccessful outcome and no fee recovery of any kind. Matavosian Decl., ¶ 37. The ongoing work has been extensive, demanding, and ultimately successful in achieving a substantial settlement resolution. Given the strengths and weaknesses of the claims and the risk and expense of further litigation, Class Counsel have achieved an excellent result on behalf of the Class and the State of California. Considering the amount of attorneys' fees to be requested, the work performed, and the risks incurred, the allocations for attorneys' fees and costs provided by the Settlement are reasonable and should be approved. *See Vizcaino*, 290 F.3d at 1051.

## VIII. CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE 23

Class certification under Rule 23(a) is appropriate where the plaintiff demonstrates the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), and one of the three requirements of Rule 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The proposed Class meets all of these requirements.

### A. Numerosity

A class is sufficiently numerous if it is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A reasonable estimate of the number of

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

1  purported class members is sufficient to meet the numerosity requirement." *In re*

2  *Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

3      The proposed Class consists of approximately 2,680 individuals. Matavosian

4  Decl., ¶ 28. The proposed Class is sufficiently numerous for settlement purposes, and

5  joinder of all Class Members would be impractical. *See Mazza v. Am. Honda Motor*

6  *Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *rev'd on other grounds*, 666 F.581, 593

7  (9th Cir. 2012) ("As a general rule, classes of forty or more are considered sufficiently

8  numerous.").

9      **B.    Commonality**

10      A class has sufficient commonality "if there are questions of fact and law

11  which are common to the class." Fed. R. Civ. P. 23(a)(2). An affirmative showing of

12  at least one common question of law or fact satisfies this requirement.[5] Commonality

13  has been found to exist when there is a common legal issue stemming from divergent

14  factual predicates or a common nucleus of facts leading to different legal remedies.

15  *Hanlon*, 150 F.3d at 1019.

16      Courts generally find commonality where "the lawsuit challenges a system-

17  wide practice or policy that affects all of the putative class members[,]" and divergent

18  ways in which these practices affect individual Class Members, if any, do not

19  undermine the finding of commonality.[6] Here, the Class Members seek remedies

20  under California's wage-and-hour laws for violations arising from common, uniform,

21  and systematic practices which applied to all Class Members during the Class Period.

22  Matavosian Decl., ¶ 29. Accordingly, the commonality requirement is satisfied for

23  settlement purposes.

24      **C.    Typicality**

25      The typicality requirement is satisfied where "the cause of the injury is the

26  same," as here, and the injury claimed by the named plaintiff is "similar" to that of

---

27  [5] *Dukes v. Wal–Mart, Inc.*, 564 U.S. 338, 350 & 359 (2011); *see also Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.").

28  [6] *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976).

unnamed class members. *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001). They need not be "identical." *Id.* at 869. Here, Plaintiff's claims are typical of those of the Class Members for settlement purposes, though some factual differences may exist among them, as the claims arise from the same events or course of conduct and are based upon the same legal theories. Plaintiff worked as a non-exempt employee for Defendant. Miranda Decl., ¶ 2.

The typicality requirement is satisfied for settlement purposes as Plaintiff's claims arise from the same factual basis and are based on the same legal theories as those applicable to all other Class Members. *See Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### D.   Adequacy of Representation

Rule 23(a)(4) requires that: (1) a class representative fairly and adequately protect the interests of the class, and (2) class counsel be qualified and competent to conduct the litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 462. The requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)." [7] The inquiry turns on whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and "whether the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Plaintiff's interests align with those of other Class Members for settlement purposes, as all of them were employed by Defendant within the State of California. Miranda Decl., ¶ 2. Plaintiff's claims are typical of those of Class Members, which are confined to a defined group of similarly situated employees during the Class Period. Class Counsel is highly experienced in employment class action and complex wage-and-hour litigation, having handled hundreds of cases before and having been appointed Class Counsel in hundreds of other cases. Matavosian Decl., ¶¶ 31-35. Plaintiff contends that Class Counsel's experience in litigating similar matters was

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

---

[7] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *see also Manual for Complex Litig., Fourth Ed.* § 21.132 ("a settlement class must be cohesive").

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

integral to obtaining the Settlement.

### E.    <u>**Predominance and Superiority**</u>

The proposed Class meets the requirements of Rule 23(b)(3) for settlement purposes because (1) common questions predominate over questions that affect individual members; and (2) class resolution is superior to other available means of adjudication. When assessing predominance and superiority, a court may consider that the proposed class will be certified for settlement purposes only. *See Amchem Prods. V. Windsor,* 521 U.S. 591, 618-20 (1997). Where the matter is being settled, a showing of manageability at trial is unnecessary. *Id.* at 620. At this stage, the relevant inquiry is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

Here, the proposed Class is sufficiently cohesive to warrant certification for settlement purposes. For settlement purposes, common questions of fact and law affecting Class Members predominate over any questions that may affect only individual members. For example, Defendant's alleged failures to properly pay Class Members for all hours worked and provide compliant meal and rest periods are alleged to arise from Defendant's uniform policies, practices, and procedures. As such, the questions of fact and law relating to these issues predominate for settlement purposes.

Moreover, a class resolution is superior to other available means for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanism of dispute resolution." *Id.* Here, the alternative method of resolution is individual claims, subject to proof, for relatively small amounts of damages, which would be uneconomical for potential plaintiffs. *Id*. Therefore, a class resolution is superior to any other available methods.

///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

## IX.  ADEQUACY OF THE METHOD OF NOTICE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. A class notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class notice is adequate if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill. LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). The notice must also be "neutral and objective in tone and should neither promote nor discourage the assertion of claims." *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996).

Here, the proposed Class Notice provides the best notice practicable and is adequate. It provides information on, *inter alia*, how their Individual Settlement Payments and, if applicable, their Individual PAGA Payments are calculated, and the number of Compensable Work Weeks and, if applicable, Compensable Pay Periods credited to them. [Proposed] Order Granting Preliminary Approval of Class Action and PAGA Settlement ("Proposed Order"), Ex. 1. All of this information is "clearly and concisely state[d] in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice also fulfills the requirement of neutrality in class notices. The proposed Class Notice summarizes the proceedings to date and the terms and conditions of the Settlement in an informative and coherent manner, and it recognizes that the Court has not yet granted final approval of the Settlement.[8] *See generally*, Ex. 1, at 3 & 5. The Class Notice sets forth the procedures and deadlines governing the Notice of Objection to the Class Settlement, Request for Exclusion from the Class Settlement, or Compensable Work Weeks Dispute, and the date and

---

[8] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("[C]ourts must be scrupulous to respect judicial neutrality" in overseeing the class action notice process and "avoid even the appearance of judicial endorsement of the merits of the action[.]").

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

time set for the Final Approval Hearing. *Id.*, at 5, 9, 10 & 11. The proposed Class Notice satisfies all due process requirements and complies with the standards of fairness, completeness, and neutrality. *See generally* Ex. A. Accordingly, the Court should approve the proposed Class Notice.

All Class Members can and will be identified by Defendant through a review of their business records. After receiving the data from Defendant regarding each Class Member, the Settlement Administrator will mail a Class Notice to each of them.[9] Settlement Agreement, Section III, ¶ 10. Accordingly, the proposed Class Notice is adequate and is the best notice practicable under Rule 23(c)(2)(B).

## X.  APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR COSTS

The Parties have selected Phoenix Settlement Administrators ("Phoenix" or "Settlement Administrator") to handle the notice and administration of the Settlement. Settlement Agreement, Section I, ¶ 34. Phoenix will distribute and respond to inquiries about the Class Notice; determine the timeliness, validity, and/or completion of any Requests for Exclusion, Notices of Objection, and Compensable Work Weeks Disputes; and calculate all amounts to be paid from the Net Settlement Fund. *Id.*, Section III, ¶ 26.

The Settlement Administrator Costs are currently estimated not to exceed $25,000.00 and will be paid out of the Total Settlement Amount subject to approval by the Court. Settlement Agreement, Section III, ¶ 26. Plaintiff respectfully requests that the Court appoint Phoenix as the Settlement Administrator and direct distribution of the Class Notice in the manner, and based on the proposed deadlines, set forth in the Settlement Agreement and Section XI, below.

///

///

---

[9] *See Elsen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (Individual notice by mail "is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2)" where "all class members [] can be identified with reasonable effort").

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

## XI.  **DEADLINES FOR NOTICE AND ADMINISTRATION**

The Court is respectfully requested to approve the proposed deadlines for the notice and settlement administration process. Upon the Court granting preliminary approval of this Agreement, Defendant shall provide the Settlement Administrator with each Class Member's and/or Aggrieved Employees' last known full name; last known address; last known telephone number; Social Security Number; number of Compensable Work Weeks; number of Compensable Pay Periods; and number of Compensable Work Weeks during the period from May 13, 2018 to June 8, 2023 (collectively, "Class Information") within fifteen (15) business days for purposes of mailing the Notice of Class Action Settlement to the Class Members. Settlement Agreement, Section I, ¶ 6 & Section III, ¶ 8.

Within fourteen (14) calendar days of receipt of the Class Information, the Settlement Administrator shall mail copies of the Notice of Class Action Settlement to all Class Members and Aggrieved Employees via regular First-Class U.S. Mail. Settlement Agreement, Section III, ¶ 10.

Any Notice of Class Action Settlement returned to the Settlement Administrator as undeliverable on or before the Response Deadline shall be re-mailed once to the forwarding address affixed thereto. Settlement Agreement, Section III, ¶ 11. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address by use of skip-tracing, or other search using the name, address and/or Social Security Number of the Class Member and/or Aggrieved Employees whose notice was undeliverable, and shall then re-mail all returned, undelivered Class Notices within five (5) calendar days of receiving notice that a Class Notice was undeliverable. Ibid.

Class Members will have forty-five (45) calendar days from the original mailing of the Notice of Class Action Settlement to submit a Request for Exclusion, Notice of Objection, or Compensable Work Weeks Dispute. Settlement Agreement, Section I, ¶ 40. Class Members who receive a re-mailed Notice of Class Action

Settlement shall have their Response Deadline extended by the longer of fourteen (14) calendar days from the date of re-mailing or the remaining original Response Deadline period. *Id*., Section III, ¶ 11.

Each Individual Settlement Payment and Individual PAGA Payment check will be valid and negotiable for one hundred and eighty (180) calendar days from the date that the checks are issued, and thereafter, shall be canceled. Settlement Agreement, Section III, ¶ 23.  All funds associated with such canceled checks will be transmitted to the State of California Office of the Controller Unclaimed Property Division in the name of the individuals who did not cash, deposit, or otherwise negotiate his/her/their checks. Ibid.

## XII.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement; certify the proposed Class for settlement purposes; appoint and designate Lawyers *for* Justice, PC as Class Counsel; preliminarily approve the allocations for the Class Counsel Award, Class Representative Enhancement Award, PAGA Settlement Amount, and Settlement Administrator Costs; appoint and designate Aleida Miranda as Class Representative; appoint and designate Phoenix Settlement Administrators as the Settlement Administrator; approve the proposed Class Notice; direct the Settlement Administrator to undertake the notice and settlement administration process in conformity with the deadlines and procedures provided by the Settlement Agreement; and schedule a Final Approval Hearing in approximately six (6) months.

Dated: April 15, 2025                    **LAWYERS *for* JUSTICE, PC**

By:  _____

Selena Matavosian
*Attorneys for* Plaintiff